```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| MARIO HERRERA,<br><br>                    Petitioner,<br><br>          -against-<br><br>UNITED STATES OF AMERICA,<br><br>                    Respondent. | 19 Civ. 6555 (LAP)<br>16 Cr. 64 (LAP)<br><br>ORDER |

Loretta A. Preska, Senior United States District Judge:

    Before the Court is Petitioner Mario Herrera's pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (see dkt. nos. 481, 482, 486).[1]  The Government opposes the motion (see dkt. no. 483).[2]  For the reasons set out below, Mr. Herrera's motion is denied.

---

[1] (Motions ("Mots."), dated July 12, 2019 [dkt. no. 481, 482] and Dec. 11, 2019 [dkt. no. 486].)  All citations to docket entries herein refer to 16-cr-64.

[2] (Memorandum in Opposition ("Memo"), dated Sep. 20, 2019 [dkt. no. 483].)  As the Government points out, Mr. Herrera's December filing (see dkt. no. 486) is substantivity identical to his earlier filed September 2019 § 2255 petition.  Accordingly, the Government has declined to file a supplemental opposition in response to Petitioner's December filing. (Letter from Jason A. Richman ("Reply Letter"), dated Feb. 24, 2020 [dkt. no. 489].)

1

I.  Background

    a. The Indictment

On January 28, 2016, a grand jury charged Mr. Herrera and sixteen co-conspirators in a two-count indictment (dkt. no. 2).[3] Count One charged Mr. Herrera with participating in a conspiracy to distribute and possess with the intent to distribute (i) five kilograms and more of mixtures and substances containing a detectable amount of cocaine and (ii) mixtures and substances containing a detectable amount of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(D) and 846.  (Id. at 2-3.)  Count Two charged Mr. Herrera with conspiracy to distribute and possess with intent to distribute quantities of oxycodone, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  (Id. at 3-4.)  Following his arrest, Sarah Kunstler, a CJA attorney, was appointed to represent Mr. Herrera (dkt. no. 68).[4]  Mr. Herrera later retained Carlos Gonzalez of Gonzalez Law Associates to represent him in the proceedings (dkt. no. 143).[5]

    b. The Plea Agreement & Mr. Herrera's Guilty Plea

On June 2, 2017, Mr. Herrera consented to proceed before a United States Magistrate Judge to change his plea (dkt. no.

---

[3] (Indictment, dated Jan. 28, 2016 [dkt. no. 2].)
[4] (Appointment of CJA Attorney Sarah Kunstler, dated Feb. 12, 2016 [dkt. no. 68].)
[5] (Notice of Appearance, dated July 4, 2016 [dkt. no. 143].)

392).[6]  Mr. Herrera pled guilty to the lesser included offense of conspiring to distribute more than 500 grams of mixtures and substances containing a detectable amount of cocaine, pursuant to a written plea agreement (dkt. no. 483-1).[7]  The plea agreement stipulated that the Sentencing Guidelines range was between 151 to 188 months imprisonment based on a total offense conduct level of 33, and that Mr. Herrera would be placed in criminal history category II.  (Id. at 2-3.)  Mr. Herrera agreed to waive his right to a direct appeal and a collateral challenge if he received a sentence within or below the Guidelines.  (Id. at 4.)  Pursuant to this agreement, the Government dismissed Count Two of the Indictment.  (Id. at 1.)

Magistrate Judge Barbara Moses presided over the plea proceedings (dkt. no. 483-3).[8]  In response to Magistrate Judge Moses' questions, Mr. Herrera answered that he understood the nature of the proceedings, was satisfied with his representation, was not under the influence of any alcohol or narcotics, was not subject to threat or force, and had discussed the plea agreement with his counsel.  (Id. at 4-7.)  Judge Moses reviewed with Mr. Herrera the appellate rights Mr. Herrera would give up by entering a guilty plea pursuant to his agreement with

---

[6] (Consent to Proceed, dated June 2, 2017 [dkt. no. 392].)
[7] (Plea Agreement, dated May 10, 2017 [dkt. no. 483-1].)
[8] (Transcript of Appearance Before Hon. Barbara Moses ("Tr."), dated June 2, 2017 [dkt. no. 483-3].)

the Government, including his waiving any right to "challenge [his] sentence, whether by direct appeal, writ of habeas corpus or otherwise." (Id. at 16.)  The Court then explained that the appropriate sentence would be imposed by the sentencing judge, who would be "limited by what the law requires." (Id. at 10.) The Court reminded Mr. Herrera that, based on his guilty plea, the Court could impose a maximum sentence of 40 years imprisonment followed a lifetime term of supervised release. (Id. at 12-13.)  The Court also informed Mr. Herrera that it was required to impose at least a mandatory minimum sentence of five years imprisonment, with four years supervised release. (Id. at 13.)  Mr. Herrera stated that he understood that the sentencing judge was not bound by the plea agreement and could impose a more severe sentence based on her own independent calculation. (Id. at 17.)  After determining that Mr. Herrera's plea was voluntary, Judge Moses stated that she would recommend the district judge accept his guilty plea. (Id. at 21.)  This Court later accepted Mr. Herrera' guilty plea (dkt. no. 403).[9]

    c. Sentencing

The Probation Office prepared and docketed a Presentence Investigation Report ("PSR") on September 7, 2017 (dkt. no.

---

[9] (Order Accepting Plea, dated June 20, 2017 [dkt. no. 403].)

4

420).[10]  Because it was determined that Mr. Herrera conspired to distribute approximately one kilogram of cocaine, the PSR calculated his base offense level at 32.  (PSR at 28.)  Given Mr. Herrera's role as the leader of the criminal activity, the PSR calculated a four point increase to the total offense level, but reduced it by three for his acceptance of responsibility and assistance of authorities.  (Id.)  The PSR thus calculated Mr. Herrera's total offense level at 33, resulting in a Guidelines range of 151 to 188 months imprisonment, consistent with the plea agreement.  (Id. at 28, 34.)  The PSR recommended a sentence of 151 months imprisonment, followed by five years supervised release.  (Id. at 38.)

On October 10, 2017, this Court held a sentencing hearing after receiving written submissions from the Government and Mr. Herrera's counsel (dkt. no. 440).[11]  Mr. Herrera's counsel advocated for imposition of the mandatory minimum sentence, while the Government argued that the Court should impose a sentence within the Guidelines, given Mr. Herrera's leadership role in the conspiracy.  (Id. at 3-7.)  This Court imposed a sentence of 151 months imprisonment, followed by seven years supervised release, during which Mr. Herrera would participate

---

[10] (Presentence Investigation Report ("PSR"), dated Sep. 7, 2017 [dkt. no. 420].)
[11] (Sentencing Transcript, dated Oct. 10, 2017 [dkt. no. 440].)

in an out-patient substance abuse program.  (Id. at 9-10.)  Mr. Herrera did not appeal his conviction or term of imprisonment; however, he did challenge the Court's imposition of the out-patient program.  See United States v. Herrera, 748 F. App'x 432, 433 (2d Cir. 2019).  The Court of Appeals affirmed the imposed sentence.  Id.

      d. Motion to Vacate

On July 12, 2019, Mr. Herrera filed a pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  Mr. Herrera argues that his counsel, Mr. Gonzalez, was constitutionally ineffective because he misrepresented material facts in connection with the plea agreement, which induced Mr. Herrera to plead guilty.  (Mots. at 8.)  Mr. Herrera specifically alleges that Mr. Gonzalez told Mr. Herrera that Mr. Herrera would receive a sentence of 60 months imprisonment and advised him that the Count Two conduct would not be used as a sentencing enhancement.  (Id.)

II.  Legal Standard

Pursuant to 28 U.S.C. § 2255, a federal prisoner "may move the court which imposed the sentence to vacate, set aside, or correct the sentence" on the grounds that the "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose

such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255.  Even if a petitioner has waived his ability to attack his sentence collaterally, waivers may be set aside "where defendant is challenging the constitutionality of the process by which he waived those rights," including when "the defendant claims that the plea agreement was entered into without effective assistance of counsel" and when the waiver was not made voluntarily and competently.  See United states v. Hernandez, 242 F.3d 110, 113-14 (2d Cir. 2001).

A defendant in criminal proceedings has a Sixth Amendment right "to effective assistance from his attorney at all critical stages in the proceedings, which include entry of a plea of guilty."  See Gonzalez v. United States, 722 F.3d 118, 130 (2d Cir. 2013).  To establish a claim for ineffective assistance of counsel, a petitioner must show two elements.  See Strickland v. Washington, 466 U.S. 668, 687 (1984).  First, a petitioner must show that the attorney's performance fell below "an objective standard of reasonableness" under "prevailing professional norms."  See id. at 688.  Second, the petitioner must show that he suffered prejudice as a result of that representation.  See id. at 693-94.

To determine whether counsel's performance fell below a standard of reasonableness, the court must bear in mind that (1) counsel "has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process," and (2) that counsel must have "wide latitude" in making "tactical decisions."  See id. at 688-89.  The Court must "make every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time," and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  See Strickland, 466 U.S. at 689.  "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  See id. at 690.

To satisfy the second prong of the Strickland test, there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  See id. at 694.  If a petitioner's claim centers on pleading guilty, he must show that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. See Hill v. Lockhart, 474 U.S. 52, 59 (1985).  If petitioner's claims relate to ineffective assistance at sentencing, he must show that, but for counsel's performance,

8

"he would have received a less severe sentence." See Gonzalez, 722 F.3d at 130.

Section 2255(a) "requir[es] a hearing in cases where the petitioner has made a 'plausible claim' of ineffective assistance of counsel." See Morales v. United States, 635 F.3d 39, 45 (2d Cir. 2011) (quoting Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009)). "To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief." Gonzalez, 722 F.3d at 131. "Airy generalities, conclusory assertions and hearsay statements will not suffice . . . ." See United States v. Aiello, 814 F.2d 109, 113 (2d Cir. 1987). The Court need not presume factual assertions are credible if contradicted by the record. See Puglisi, 586 F.3d at 214. If it "plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." See id.

III. Discussion

Mr. Herrera asserts that Mr. Gonzalez' "misrepresentation of the law and the plea agreement caused [him] to waive substantial rights he would not have done otherwise." (Mots. at 8.) This Court, however, concludes that Mr. Herrera's claims of

9

ineffective assistance are refuted by his own sworn statements made on the record at his plea hearing.

First, the transcript of the plea hearing establishes that Mr. Herrera's plea was knowing and voluntary. Judge Moses explained to Mr. Herrera the nature of the charges against him, confirmed that he reviewed the agreement with his attorney and understood its terms, emphasized the plea must be voluntary, and explained the rights that Mr. Herrera would give up by pleading guilty. (Tr. at 7-11, 14-19.) Under oath, Mr. Herrera affirmed his understanding of each of these elements. (Id.)

Second, the plea hearing transcript directly contradicts the allegation that Mr. Gonzalez misled Mr. Herrera during plea discussions. During the proceeding, Mr. Herrera acknowledged under oath that he understood (1) the maximum term of imprisonment was 40 years, (2) the sentencing judge had the sole discretion to determine the sentence, and (3) the Plea Agreement was not binding on the sentencing judge. (Tr. at 10, 12-13.)

Third, the plea hearing transcript indicates that Mr. Herrera understood the nature of the plea agreement and how he would be sentenced. Magistrate Judge Moses explained the terms of the agreement and the sentencing process. (Tr. at 15.) She then asked Mr. Herrera if he understood the plea agreement and directed him toward the Sentencing Guidelines portion. (Id.) Judge Moses indicated that the agreement stipulated a sentencing

10

range of 151 to 188 months of imprisonment, with a mandatory minimum sentence of 5 years.  (Id.)  Mr. Herrera explicitly affirmed that he understood the terms.  (Id.)  As the plea agreement makes clear, the Guidelines range is based on the calculation of an offense level of both Counts One and Two. (Plea Agreement at 2).  By acknowledging the range within the plea agreement to Judge Moses, Mr. Herrera indicated that he was aware his Guidelines range would be based on both counts.

Lastly, Mr. Herrera stated under oath that no person had made any promises concerning the actual sentence he would receive.  (Tr. at 18).  This contradicts Mr. Herrera's after-the-fact claim that Mr. Gonzalez told him he would receive a sentence of 60 months imprisonment.

Because Mr. Herrera's assertions are contradicted plainly by the record, the Court need not presume they are credible. See Puglisi, 586 F.3d at 214.  Thus, Mr. Herrera has not satisfied either prong of the Strickland test and is therefore not entitled to a hearing nor relief.

Moreover, as part of the plea agreement, Mr. Herrera waived his ability to attack his sentence collaterally.  (Plea Agreement at 4.)  "Where the record reveals that the waiver was knowing and voluntary, and that there is no merit to the ineffective assistance claim, the waiver should be enforced." Muniz v. United States, 360 F. Supp. 2d 574, 577 (S.D.N.Y. 2005)

11

(citing United States v. Monzon, 359 F.3d 110, 119 (2d Cir. 2004)).

IV.  Conclusion

For the reasons set out above, Defendant's pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [dkt. nos. 481-82, 486] is denied.  Because Mr. Herrera has not made a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue.  See 28 U.S.C. § 2253(c).  The Court certifies that any appeal from this Order would not be taken in good faith.  See 29 U.S.C. § 1915(a)(3); Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to close the open motions (dkt. no. 481 in 16-cr-64; dkt. no. 1 in 19-cv-6555).  The Clerk of the Court is further directed to mail a copy of this order to Mr. Herrera.

**SO ORDERED.**

Dated:    New York, New York
          August 12, 2021

_Loretta A. Preska_
LORETTA A. PRESKA
Senior United States District Judge